**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:                                                                                          Chapter 7

TZVI H. GOLDSTEIN and CHAYA M. GOLDSTEIN                      Case No. 22-22163 (SHL)

                                        Debtors.
------------------------------------------------------------x
AMERICAN EXPRESS NATIONAL BANK

                                        Plaintiff,

                    vs.

CHAYA M. GOLDSTEIN                                                       Adv. No. 22-07032 (SHL)
                                        Defendant.
------------------------------------------------------------x

## MEMORANDUM OF DECISION

**A P P E A R A N C E S:**

**PAUL J. HOOTEN & ASSOCIATES**
*Counsel for American Express National Bank*
5505 Nesconset Highway, Suite 203
Mt. Sinai, New York 11706
By:    Paul J. Hooten, Esq.

**BLEICHMAN & KLEIN**
*Counsel for Chaya M. Goldstein*
117 South Main Street
Spring Valley, New York 10977
By:    Joshua N. Bleichman, Esq.

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is the motion for summary judgment of Plaintiff American Express National Bank ("Amex") which seeks a determination that the debt of Defendant-Debtor Chaya M. Goldstein to Amex is nondischargeable.  *See* Plaintiff's Motion for Summary Judgment [ECF

No. 11] (the "Motion").[1] Amex asserts that Ms. Goldstein's debt is nondischargeable because Ms. Goldstein made false representations about her intent and ability to repay the obligation given the undisputed facts surrounding the creation of the debt. *See generally* Complaint to Determine Dischargeability of Debt under § 523(a)(2)(A) and §523(a)(2)(C) [ECF No. 1] ("Compl."). Ms. Goldstein opposes the Motion, asserting that Amex failed to meet its burden to show its entitlement to judgment through admissible evidence, and that Amex has not shown that the required elements for nondischargeability have been met. *See* Memorandum of Law in Opposition to Motion for Summary Judgment [ECF No. 13-1] ("Mem. in Opp."). Based on the record as supplemented and for the reasons set for below, Amex's motion is granted.

## BACKGROUND

The relevant facts cannot be disputed.[2] On March 2, 2022, Ms. Goldstein completed the credit counseling course that is a prerequisite for an individual filing for bankruptcy. *See*

---

[1] Unless otherwise noted, all Case Management/Electronic Case Filing ("ECF") references are to Adv. Pro. No. 22-07032.

[2] Though Ms. Goldstein denied many of the facts asserted in the Supplemental Plaintiff's Statement of Material Facts [ECF No. 18] ("Plaintiff SMF"), *see* Defendant's Response to Plaintiff's Statement of Material Fact [ECF No. 19] ("Defendant's Response"), counsel to Ms. Goldstein conceded during oral argument that Ms. Goldstein did not dispute the facts as stated by Amex and would rest on her legal argument. In any event, the Court cannot credit any of Ms. Goldstein's denials to the Plaintiff's Statement of Material Facts because she does not cite any admissible evidence to counter the facts asserted by Amex. *See* Local Rule 7056-1(e); *see also Havens v. Salman (In re Salman)*, 2016 WL 11728990, at *1 n.2 (Bankr. S.D.N.Y. Nov. 7, 2016) (citing *In re Sultan Realty, LLC*, 2012 WL 6681845, at *4 (Bankr. S.D.N.Y. Dec. 21, 2012); *accord In re Basic Food Grp., LLC*, 2018 WL 5805943, at *6 (Bankr. S.D.N.Y. Oct. 31, 2018) ("In analyzing the [motion for summary judgment], the Court will deem those paragraphs in the [movant's] 7056 Statement that the [respondents] have not controverted with admissible evidence, as admitted for purposes of the [summary judgment motion]."). The Court also notes that the evidentiary support on which the Plaintiff SMF relies are statements or admissions made by Ms. Goldstein in response to discovery demands. Accordingly, the Court may disregard Ms. Goldstein's denials that directly conflict with her earlier discovery responses. *See Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd.*, 401 F. Supp. 3d 433, 438 (S.D.N.Y. 2018); *Reisner v. Gen. Motors Corp.*, 671 F.2d 91, 93 (2d Cir. 1982) ("[W]e have disregarded those factual claims made by [plaintiff] after [defendant] moved for summary judgment, where those claims contradict statements made previously by [plaintiff] at his deposition, in his affidavits, and in response to defendants' interrogatories."); *see infra* fn. 3 and 4. "A trial court is not required to 'wade through improper denials and legal argument in search of a genuinely disputed fact.'" *In re AMR Corp.*, 2018 WL 2997104, at *11 (Bankr. S.D.N.Y. June 12, 2018), *aff'd*, 610 B.R. 434 (S.D.N.Y. 2019), *aff'd*, 834 F. App'x 660 (2d Cir. 2021) (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 528–29 (7th Cir. 2000)); *see also In re Gutierrez*, 528 B.R. 1, 8 (Bankr. D. Vt. 2014) (noting that "in each instance where the Creditor asserts one of the Debtor's 'undisputed material facts' is disputed, either (1) the fact is not material, (2) the Creditor has failed to present significant

2

Plaintiff SMF ¶ 2; *see also* 11 U.S.C. § 109(h). On March 8, 2022, six days after completing credit counseling, Ms. Goldstein opened a credit card account with Amex which was assigned an account number ending in 1002 (the "Account"). *Id.* ¶ 4; *see also* Affidavit of American Express National Bank in Support of Motion for Summary Judgment [ECF No. 18-1] ("Fogelman Affidavit") ¶ 8.[3] Between March 11, 2022 and March 28, 2022, Ms. Goldstein utilized the Account to make thirty eight purchases totaling $16,221.16. *Id.* ¶ 5; *see also* Fogelman Affidavit ¶ 11.[4] Among the purchases were twenty six charges on Amazon.com totaling $10,511.96; two charges at the Hat Box of Monsey for $1,612.94; one charge at Aesthetic Dental for $1,200.00; and one charge at Interstate Toyota for $1,181.89. Fogelman Affidavit ¶¶ 13-16; *see also* Motion Ex. A.[5] Ms. Goldstein met with her bankruptcy counsel on March 13, 2022, two days after she made her first purchase utilizing the Account. Plaintiff SMF ¶ 3.[6] On April 3, 2022—less than a week after the last charge on the Account—Ms. Goldstein and her husband, Tzvi H.

---

probative evidence that any genuine dispute of fact exists, (3) the materials upon which the Creditor relies do not establish a dispute, or (4) the 'disputed fact' is actually a legal argument.").

[3]    Ms. Goldstein contends that "[n]othing in the admissible record shows that I opened the credit card. In fact, I did not." Defendant's Response ¶ 4. But Ms. Goldstein previously admitted during discovery that she opened the Account. *See* Plaintiff's First Requests for Admission under Set of Interrogatories under Fed. R. Bankr. P. 7036 and Rule 36 Fed. R. Civ. P. [Case No. 22-22163, ECF No. 7-2] ("Request for Admission Response"), Response to Question 8 (in response to requests for admission, Ms. Goldstein admitting that she opened the Account after receiving credit counseling in anticipation of filing for bankruptcy). Accordingly, the Court concludes that this fact is established for purposes of the record.

[4]    Ms. Goldstein asserts that "[n]othing in the admissible record shows that I used the credit card. In fact, I did not." Defendant's Response ¶ 5. But once again, Ms. Goldstein previously admitted during discovery that she used the credit card account for a total of thirty eight purchases totaling $16,221.16 between March 11, 2022 and March 29, 2022. *See* Request for Admission Response, Question 11. Accordingly, the Court concludes that this fact is established for purposes of the record.

[5]    Once again, despite denying this statement in the Defendant's Response, Ms. Goldstein had previously admitted to making the listed purchases. *See* Request for Admission Response, Questions 12-15.

[6]    Ms. Goldstein asserts that she first met with her bankruptcy attorney on the day she signed her bankruptcy petition "and not before." Defendant's Response ¶ 3. But once again, her prior statements in this case establish otherwise. In response to an interrogatory asking Ms. Goldstein to identify the date on which she first met with her bankruptcy attorney, she responded "03/13/2022 with Bleichman and Klein." *See* Plaintiff's First Set of Interrogatories Under Fed. R. Bankr. P. 7033 and Rule 33 Fed. R. Civ. P. [ECF No. 7-2], Response to Question 5 ("Interrogatory Response").

3

Goldstein, filed a joint petition for relief under Chapter 7 of the Bankruptcy Code. Plaintiff SMF ¶ 1; *see also* ECF No. 1, Case No. 22-22163. At the time Ms. Goldstein and her husband filed their bankruptcy petition, their expenses—which did not include payments to creditors or credit card companies—exceeded their income. *See* ECF No. 1, Case No. 22-22163 (Schedule I listing income totaling $8,264.38 and Schedule J listing expenses totaling $8,880.00, resulting in a monthly deficit of $615.62); *see also* Request for Admission Response, Question 48 (admitting that the information in the bankruptcy schedules is accurate).

After the bankruptcy case was filed, Amex commenced this adversary proceeding. After the summary judgment papers were filed, the Court held oral argument, at which time the Court suggested that additional pleadings were appropriate. Both Amex and Ms. Goldstein subsequently filed supplemental pleadings in support of their positions. *See* Plaintiff SMF; Fogelman Affidavit; *see also* Defendant's Response; Supplemental Defendant's Statement of Material Facts [ECF No. 19-1] ("Defendant SMF").

## DISCUSSION

### I.    Standard

#### A. *Motion for Summary Judgment*

Rule 56 of the Federal Rules of Civil Procedure, made applicable to bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). If "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253,

4

288 (1968)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

The party seeking summary judgment bears the burden of demonstrating that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. City of New York*, 72 F.3d 1051, 1060–61 (2d Cir. 1995) ("The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [the movant's] right to judgment as a matter of law."). "[I]n assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *Anderson*, 477 U.S. at 255). "[F]or purposes of summary judgment, a dispute or issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Read Prop. Grp. LLC v. Hamilton Ins. Co.*, 2018 WL 1582291, at *5 (E.D.N.Y. Mar. 30, 2018) (quoting *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017)).

"If the movant would bear the burden of proof at trial, then that party's 'own submissions in support of the motion must entitle it to judgment as a matter of law." *Read Prop. Grp.,* 2018 WL 1582291, at *5 (quoting *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998)). Nevertheless, once a movant has established its *prima facie* entitlement judgment as a matter of law, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a

5

Pg 6 of 18

genuine issue for trial." *Anderson*, 477 U.S. at 248 (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)); *see also Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir.), *certified question accepted sub nom. Jaramillo v. Weyerhaeuser Co. & Tech. Licensing Assocs.*, 11 N.Y.3d 744 (2008), *and certified question answered*, 12 N.Y.3d 181, (2009) (to overcome summary judgment "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial.") (internal citation omitted).

      B.  *Nondischargeable Debts*

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 286, 287 (1991)).  "However, the fresh start policy does not apply to all debts and debtors, and numerous Code provisions establish limitations on discharge." *Evans v. Ottimo*, 469 F.3d 278, 281 (2d Cir. 2006).  "These exceptions deny relief to debts resulting from certain types of undesirable behavior such as fraud." *Id.* (citing 11 U.S.C. § 523(a)(2)).  But exceptions to discharge are narrowly construed, and the creditor must prove by a preponderance of evidence that its claim is nondischargeable. *Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86 (2d Cir. 2000) (internal citations omitted).

The types of debt excluded from discharge are set forth in Section 523 of the Bankruptcy Code.  Amex invokes two provisions from Section 523: 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. §523(a)(2)(C).  Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."  The second section cited by Amex—Section 523(a)(2)(C)—

6

excepts from discharge "consumer debts owed to a single creditor and aggregating more than $800 for luxury goods or services incurred by an individual debtor on or within 90 days before the order for relief."

## II. Analysis

### A. Threshold Arguments

The Court turns first to some threshold issues raised by the parties. The first such issue is what claims are to be decided by the Court. The Complaint asserts one cause of action: a claim that the amount owed by Ms. Goldstein on the Account is nondischargeable under Section 523(a)(2)(A) and 523(a)(2)(C). *See generally* Compl. The Complaint does not seek a monetary judgment for the balance Amex asserts it is owed. Accordingly, the only issue before the Court is whether the balance owed on the Account is eligible for a discharge in this proceeding, or whether Amex will retain its rights to pursue collection of this debt regardless of this bankruptcy case. While Amex's counsel made a statement during oral argument that Amex was seeking a judgment for a specific amount, Amex's papers are devoid of any such request. Accordingly, the Court will only consider the issue of nondischargeability.[7]

The second threshold issue is the state of the record. Under the local rules of this Court, a motion for summary judgment must include a "separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." S.D.N.Y. Local Bankr. R. 7056-1(b). Failure to submit such a statement constitutes grounds for denial of the motion. *Id.* Ms. Goldstein correctly notes that the

---

[7] Ms. Goldstein's opposition argues that Amex failed to prove the terms of the putative contract and its right to collect interest and fees, or that the use of the Account was authorized under the Federal Truth in Lending Act. Mem. in Opp. at 10-12. However, these arguments are only relevant if this Court were ruling on Amex's entitlement to a monetary judgment, which is it not. Similarly, Ms. Goldstein argues that Amex failed to establish the elements of an "account stated" claim, despite the fact that no such claim is asserted in the Complaint. *See* Mem. in Opp. at 12. As these arguments are irrelevant to the nondischargeability claim, the Court will not address them.

Motion as originally filed did not contain such a statement. Mem. in Opp. at 3-4. At oral argument, however, the Court identified this problem and offered Amex an opportunity to correct the deficiency, to which Ms. Goldstein did not object. Accordingly, counsel for Amex filed a letter with the Court outlining the dates by which Amex would file a supplement to its Motion and the date by which Ms. Goldstein would respond to this additional submission of Amex. *See* ECF No. 17. Consistent with this procedure, Amex filed its Plaintiff SMF in December 2023 and Ms. Goldstein responded in January 2024. *See* Plaintiff SMF [ECF No. 18]; Defendant's Response and Defendant SMF [ECF No. 19]. As the omission of the Plaintiff SMF has been rectified, the Court now has an appropriate record for deciding the Motion and rejects Debtor's objection based on the now cured deficiency.

The third threshold issue is Ms. Goldstein's contention about the admissibility of the evidence here. Ms. Goldstein argues in conclusory fashion that the Motion should be denied because Amex relies on "robo-signed hearsay and prohibited secondary evidence" to support the Motion. Mem. in. Opp. at 2, 8-10. Under the so-called "business records rule," however, hearsay may be considered if the record "was kept in the course of a regularly conducted activity of a business;" "the record was made at or near the time by . . . someone with knowledge;" "making the record was a regular practice of that activity;" and "all these conditions are shown by the testimony of the custodian or another qualified witness." Fed. R. Evid. 803(6). "The principal precondition to admission of documents as business records [under] Fed. R. Evid. 803(6) is that the records have sufficient indicia of trustworthiness to be considered reliable." *Saks Int'l, Inc. v. M/V Exp. Champion*, 817 F.2d 1011, 1013 (2d Cir. 1987) (internal citation omitted).

In this case, Amex submitted an amended affidavit from Stephanie Fogelman in support of the Motion. *See* Fogelman Affidavit. Ms. Fogelman is an assistant custodian of records for Amex who stated that she is "familiar with the books, records, and files of [Amex]" and Amex's books and records pertaining to the Account are under her "care, custody, and control." *Id.* ¶¶ 1-3. Ms. Fogelman further stated that the account statements offered in support of the Motion were generated from transactions and data entries made by Amex representatives and that data have not been altered or tampered with, and that the records are kept "in the course of [Amex's] regularly conducted lending activities, and were made in the course of [Amex's] regularly conducted lending activities as a regular practice." *Id.* ¶¶ 7, 21.

Ms. Goldstein does not offer any evidence or persuasive argument that the records offered by Amex here are untrustworthy or do not otherwise meet the requirements for the business records exception under Rule 803. Even prior to the Fogelman Affidavit being filed, counsel to Ms. Goldstein conceded at oral argument that there was no basis to question the trustworthiness of the records. In any event, Ms. Goldstein has previously conceded that she incurred the charges on her Account. *See* Request for Admission Response, Questions 11-15. Based on the statements in the Fogelman Affidavit and Ms. Goldstein's own admissions, the Court finds that Ms. Goldstein's charges on the Account are an undisputed fact for the purposes of this Motion. *See Shantou Real Lingerie Mfg. Co. v. Native Grp. Int'l, Ltd.*, 401 F. Supp. 3d 433, 438 (S.D.N.Y. 2018) ("Where the factual assertions . . . are in direct conflict with . . . earlier discovery responses, and are not supported by other evidence, the Court has disregarded those assertions.").

9

*B. Nondischargeability under Section 523(a)(2)(A)*

Under Section 523(a)(2)(A), a "false representation means that '(1) the defendant made a false or misleading statement (2) with intent to deceive (3) in order for the plaintiff to turn over money or property to the defendant.'" *Lupe Dev. Partners, LLC v. Deutsch (In re Deutsch)*, 575 B.R. 50, 59 (Bankr. S.D.N.Y. 2017) (quoting *Frishberg v. Janac (In re Janac)*, 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009)).[8]

When analyzing whether credit card debt is nondischargeable under Section 523(a)(2)(A), there is a question about what charges are properly the subject of a nondischargeability action. There are three main approaches that courts across the country have taken. The first is the assumption of risk doctrine, which holds that until a credit card company revokes a card, the company assumes the risk that debtors who do not have the ability to pay will use the card, and only charges made after revocation of the card will be considered nondischargeable. *See MBNA America v. Parkhurst (In re Parkhurst)*, 202 B.R. 816, 821 (Bankr. N.D.N.Y 1996) (describing the assumption of risk doctrine and noting that it has only been adopted by a minority of courts). The second approach is the implied representation theory, which provides that each time a debtor uses a credit card the debtor represents by implication that they have the intent to repay the charges incurred. *See Bank of Am. v. Jarczyk (In re Jarczyk)*, 268 B.R. 17, 21 (W.D.N.Y. 2001). Under the third approach, the totality of circumstances test, courts consider a multitude of factors in determining whether a debtor engaged in false pretenses or fraud when using a credit card or obtaining credit. *Colonial Nat'l*

---

[8] Some courts have added additional gloss to this test, laying out five factors that look to substantially the same considerations to determine if a false representation was made. *See, e.g., Citibank (South Dakota), N.A. v. Spradley (In re Johnson)*, 313 B.R. 119, 128 (Bankr. E.D.N.Y. 2004) (in order to except a debt from discharge under Section 523(a)(2)(A) a creditor must show "first, that the debtor made a false representation; second, that at the time it was made, the debtor knew it was false; third, that the debtor made the representation with the intent of deceiving the creditor; fourth, that the creditor justifiably relied on the representation; and finally, that the creditor sustained loss or damages that was proximately caused by the false representation.").

10

*Bank USA v. Leventhal (In re Leventhal)*, 194 B.R. 26, 29 (Bankr. S.D.N.Y. 1996) (internal citations omitted). While the Second Circuit has yet to definitely announce an approach, courts within the jurisdiction have followed the "implied representation" test used by the majority of courts. *Id.* at 30; *see also Jarczyk*, 268 B.R. at 22-23; *American Express Centurion Bank v. Truong (In re Thanh V. Truong)*, 271 B.R. 738, 745 (Bankr. D. Conn. 2002)); *Johnson,* 313 B.R. at 128. Following the implied representation approach here, the question becomes whether all the charges made by Ms. Goldstein are dischargeable.

Turning to the first requirement for false representation, it is clear that Ms. Goldstein made the implied representation that she intended to repay the debt incurred, thus satisfying the first prong of Section 523(a)(2)(A). *See In re Giuffrida*, 302 B.R. 119, 124 (Bankr. E.D.N.Y. 2003) ("[E]ach time a credit card holder uses his credit card, he *impliedly* represents his intention to repay the debt incurred.") (emphasis in original). Indeed, Ms. Goldstein has admitted that she incurred the charges that constitute the debt to Amex. S*ee* Request for Admission Response, Questions 11-15.

Turning to the second prong concerning intent, the question is whether Ms. Goldstein intended to repay the debt when she made the charges to the Account. As "'intent to defraud is rarely proven by direct evidence,' courts assess this element using a 'totality of the circumstances' approach to discern the debtor's subjective intent.'" *Johnson,* 313 B.R. at 132 (quoting *Truong*, 271 B.R. at 745). In evaluating the totaling of circumstances, courts look to a number of factors, including: "the time between card use and the bankruptcy filing; whether an attorney was consulted about bankruptcy prior to card use; the number of charges and their amount; whether multiple charges were made in one day or whether the debtor's buying habits suddenly changed; whether the debtor was employed and/or his employment prospects; and

11

whether luxuries or necessities were purchased." *Jarczyk*, 268 B.R. at 23.  This list is not exhaustive and no one factor is dispositive.  *Id.*

Based on the undisputed facts, the Court finds that Ms. Goldstein did not intend to repay these debts when she incurred them.  Perhaps most damning are her actions right before making these charges: she both completed required pre-bankruptcy counseling and consulted and paid a bankruptcy attorney.  Plaintiff SMF ¶¶ 2, 3.  Ms. Goldstein attempts to explain away this fact by stating that she had "no knowledge of [her] family finances," that her husband takes care of all financial matters, and that she only took the counseling course at the behest of her husband and did not understand that the credit counseling course was a prerequisite to filing for bankruptcy.  Defendant SMF ¶¶ 15-16.  But it is well settled that "a party will 'not be excused from his failure to read and understand the contents' of a document" such as a retainer agreement or materials provided as part of a mandatory class.  *Gil v. Bensusan*, 2019 WL 12334706, at *3 (S.D.N.Y. Oct. 30, 2019) (quoting *Victorio v. Sammy's Fishbox Realty Co., LLC*, 2015 WL 2152703, at *11 (S.D.N.Y. May 6, 2015)).  Indeed, "premeditated, calculated ignorance, coupled with active participation . . . while the account holder is insolvent in fact, belies any defense of 'intent to repay.'"  *In re Reid*, 237 B.R. 577, 587–88 (Bankr. W.D.N.Y. 1999).  In an affidavit submitted in her initial opposition to the Motion, Ms. Goldstein stated that she has a master's degree and works as a teacher.  *See* ECF No. 13 ¶ 2.  Ms. Goldstein's educational background belies her claimed inability to understand a course that is a prerequisite for all individuals who choose to file for bankruptcy.  Additionally, she was present during the initial consultation with her bankruptcy counsel; that meeting occurred before the vast majority of the debt here was incurred. Plaintiff SMF ¶¶ 3, 5; *see also* Interrogatory Response Question 5 (in response to the question

12

"State the date . . . *you* first met with the attorney representing you in this bankruptcy case" Ms. Goldstein responded "03/13/2022 with Bleichman and Klein.") (emphasis added).

The other undisputed facts here support the conclusion that Ms. Goldstein did not intend to repay the debt incurred. The time between the first purchase made using the Account and the bankruptcy filing is exceedingly short. Indeed, Ms. Goldstein filed for bankruptcy so quickly after opening the Account that no interest accrued on the account despite Ms. Goldstein's failure to make a single payment towards the debt. *See* Motion Ex. A; Fogelman Affidavit ¶ 18. The number of charges is also significant and reflects an unusual pattern of spending. And while Ms. Goldstein insists that all of the purchases were necessities made on a "needed basis," *see* Defendant SMF ¶ 17, the facts do not support that claim. The charges on the Account included over $1,600 in clothing purchases and multiple appliance purchases, all in a short time period. Fogelman Aff. ¶ 14; Defendant SMF ¶ 17. The Court also notes that Ms. Goldstein lacked an ability to make any payment on these charges given the budget deficit listed in her bankruptcy schedules filed right after the charges were incurred; this further supports a finding that the representation that Ms. Goldstein intended to repay the debt was false. Courts have routinely found debt incurred in a "spending spree," where a large number of purchases for luxury items over a short period of time, was nondischargeable. *See American Express Centurion Bank v. Guillen (In re Guillen)*, 2007 WL 2009773 (Bankr. D. Conn. July 6, 2007), *decision supplemented*, 2007 WL 2302347 (Bankr. D. Conn. Aug. 8, 2007) (granting the creditor's motion for summary judgment on nondischargeability where the bulk of the debt was incurred in a short period of time as a result of luxury purchases made when the Debtor had no ability to repay the debt); *Citibank USA, N.A. v. Spring (In re Spring)*, 2005 WL 588776 (Bankr. D. Conn. Mar. 7, 2005) (finding the debt nondischargeable when the debtor engaged in a spending spree

13

on luxury goods shortly before filing for bankruptcy at the time the debtor was unemployed); *Citibank (South Dakota), N.A . v. Senty (In re Senty)*, 42 B.R. 456 (Bankr. S.D.N.Y. 1984).

While it is true that intention is typically a question of fact, *see Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 711 (2d Cir. 1991), there is no need for a trial here. As Amex has established its *prima facie* entitlement to judgment—which it has done for the reasons explained above—it is incumbent upon Ms. Goldstein to come forward with "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Ms. Goldstein has not done so, and accordingly, no reasonable trier of fact could find that she possessed an intent to repay the obligation to Amex. "The nonmovant . . . cannot create a genuine issue of fact and defeat summary judgment through 'conclusory allegations, conjecture, and speculation.'" *In re Mishkin v. Gurian (In re Adler, Coleman Clearing Corp.)*, 399 F. Supp. 2d 486, 490 (S.D.N.Y. 2005) (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir.1998)).

### C. Reliance

In addition to showing a false representation, Amex must also demonstrate that it relied on the representation. *MBNA Am. v. Parkhurst (In re Parkhurst)*, 202 B.R. 816, 823 (Bankr. N.D.N.Y. 1996). A creditor's reliance on the false representation must be justifiable. *Field v. Mans*, 516 U.S. 59, 61 (1995). A creditor "must allege facts sufficient to support a prima facie case showing that it conducted a credit check of the debtor or that 'circumstances otherwise exist which demonstrate credit was not extended blindly.'" *Johnson,* 313 B.R. at 133 (quoting *AT&T Universal Card Serv. Corp. v. Akdogan (In re Akdogan)*, 204 B.R. 90, 97 (Bankr. E.D.N.Y. 1997)). In other words, "[t]he credit card issuer justifiably relies on a representation of intent to repay as long as the account is not in default and any initial investigations into a credit report do

14

not raise red flags that would make reliance unjustifiable." *Id.* (quoting *Anastas v. Am. Savings Bank (In re Anastas)*, 94 F.3d 1280, 1286 (9th Cir. 1996)).

Amex asserts that it relied on Ms. Goldstein's representation that she intended to repay the obligation on the Account. Fogelman Aff. ¶ 23. Specially, Amex states that at the time Ms. Goldstein utilized the account, Amex "had no information or knowledge that the Defendant was at the time incurring other unsecured, nonpriority debts which she would not have been able to pay," and that Amex would not have allowed Ms. Goldstein to incur charges on the Account "if it believed that [Ms. Goldstein] had neither the intent nor the ability to pay." *Id.* ¶¶ 33, 37. Amex further states that it had no information or knowledge that Ms. Goldstein had completed bankruptcy credit counseling or met with and paid her bankruptcy counsel. *Id.* ¶ 35.

Ms. Goldstein disputes that Amex relied on her representation, arguing that Amex has not shown that their reliance was justified. Mem. in Opp. at 7-8; *see also* Defendant SMF at ¶¶ 2-7. Ms. Goldstein infers that Amex should have known she could not repay the obligation because at the time Ms. Goldstein received the solicitation to open the card, she was experiencing financial difficulties. Defendant SMF ¶ 7. But Ms. Goldstein's position overstates the required showing that Amex must make, and also contradicts her own previous statements. Indeed, "the required inquiry is not onerous, and . . . 'need be no more than cursory.'" *Fleet Credit Card Serv., L.P. v. Macias (In re Macias)*, 324 B.R. 181, 193 (Bankr. E.D.N.Y. 2004) (quoting *Daly v. Braizblot (In re Braizblot),* 194 B.R. 14, 21 (Bankr. E.D.N.Y. 1996)). "Thus, if at the time the charges at issue were incurred, the debtor maintained a balance within his or her credit limits and made the payments required under the credit agreement, that would show an absence of 'red flags' and lend support to an inference that the creditor justifiably relied on the debtor's false representations as to his or her intent to repay." *Id.*

15

The Fogelman Affidavit is sufficient to demonstrate that when Amex extended credit to Ms. Goldstein, it had no reason to believe she would not repay the debt. Indeed, there is no way that Amex could have known that Ms. Goldstein met with a bankruptcy attorney or completed credit counseling unless Ms. Goldstein affirmatively disclosed those facts to Amex, and there is no evidence that she did so. *See generally* Request for Admission Response; Interrogatory Response.[9] And while Ms. Goldstein stated that she and her husband were experiencing financial difficulty, *see* Defendant SMF ¶ 7, Ms. Goldstein represented that she and her husband had previously had financial difficulties but were able to satisfy their obligations. *See* Interrogatory Response, Question 17 ("I still hoped to be able to pay everything back *as we always did in the past . . . .*") (emphasis added). Additionally, though the Statement of Financial Affairs lists several debt collection lawsuits, all those lawsuits were brought against Ms. Goldstein's husband, not her. *Id.,* Question 20.

### D. Luxury Purchases

Amex also invokes Section 523(a)(2)(C) as a basis to find Ms. Goldstein's debt nondischargeable. Motion at 9-10; *see also* Compl. ¶ 13. Section 523(a)(2)(c) provides that "consumer debts owed to a single creditor and aggregating more than $800 for luxury goods or services incurred by an individual debtor on or within 90 days before the order for relief under this title are presumed to be nondischargeable." 11 U.S.C. § 523(a)(2)(C). Section 523 defines luxury goods "in the negative . . . merely provid[ing] that the term 'luxury goods' does not include 'goods or services reasonably acquired for the support or maintenance of the debtor or a

---

[9] Ms. Goldstein complains that she sought discovery to disclose what due diligence Amex undertook before allowing Ms. Goldstein to open the Account but that she did not receive a response. Defendant SMF ¶ 4. But to the extent that Ms. Goldstein sought discovery about Amex's knowledge, evidence about any disclosure by Ms. Goldstein to Amex would be within her knowledge and possession. She has not provided any specific facts that call into question Amex's lack of knowledge as to her bankruptcy counseling or her hiring of a bankruptcy attorney.

16

dependent of the debtor . . . .'" *Varble v. Chase (In re Chase)*, 372 B.R. 133, 140 (Bankr. S.D.N.Y. 2007). "When determining whether services can be characterized as 'luxury . . . services' courts look to the circumstances of each particular case to see if the services were 'extravagant,' 'indulgent,' or 'nonessential.'" *Id.* (citing *Montgomery Ward & Co. v. Blackburn (In re Blackburn)*, 68 B.R. 870 (Bankr. N.D. Ind. 1987)). Ms. Goldstein does not dispute that an obligation of more than $800 was incurred within ninety days of the bankruptcy filing to a single creditor. But she asserts that all of the purchases were necessities made on a "needed basis" and avers that the purchases included groceries. S*ee* Defendant SMF ¶ 17. While Amex has established that at least some of the purchases were clearly for luxury goods—most notably, over $1,600 in purchases made at the Hat Box of Monsey, a clothing store, Fogelman Aff. ¶ 14—it has not demonstrated that each and every purchase made was for a luxury good. *See J.C. Penny Co., Inc. v. Herran (In re Herran),* 66 B.R. 323, 323 (Bankr. S.D. Fla. 1986) (finding excessive purchases of clothing to be luxury goods). Nevertheless, the Court need not parse which purchases were luxury purchases under Section 523(a)(2)(C) given that the Court has already determined that Ms. Goldstein's obligations on the Account are nondischargeable under Section 523(a)(2)(A).

## **CONCLUSION**

For the reasons stated above, the Court grants summary judgment in favor of Amex on the first cause of action asserted in the Complaint under Section 523(a)(2)(A) and denies without prejudice the request for summary judgment on the second cause of action under Section 523(a)(2)(C). Amex should settle an order on five days' notice. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of

the notice and proposed order shall also be served upon both the Defendant and counsel to the

Defendant.

Dated: White Plains, New York
       October 11, 2024

                                                          */s/ Sean H. Lane*
                                        UNITED STATES BANKRUPTCY JUDGE